

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RLC:WMN
F.#2004R01800

*271 Cadman Plaza*
*Brooklyn, New York 11201*

August 23, 2012

Submitted Under Seal
The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Redacted

Re: United States v. Gabriel Herrera, et al.
Criminal Docket No. 04-749 (JG)

Dear Judge Gleeson:

The government respectfully submits this letter pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("Guidelines") and 18 U.S.C. § 3553(e) to permit the Court, in its discretion, to depart downwardly from the applicable advisory Guidelines range and below the statutory mandatory minimum sentence for the defendant Gabriel Herrera Villada ("Herrera"). The defendant's sentencing is scheduled for October 19, 2012. As explained in more detail below, Herrera has provided substantial assistance to the government in securing charges and convictions against
Jorge de Jesus Velasquez, Ramon Antonio Duque Marin,
, Juan Guillermo Rivera Rivera, and Juan Esteban Betancurt Herrera. He also provided assistance in, among other things discussed below, obtaining investigatory leads against

I. Case Background and the Defendant's Criminal Activities

As detailed in the Presentence Report ("PSR"), Herrera was a large-scale narcotics trafficker

Herrera is responsible for distributing approximately 85,000 kilograms (or 85 tons) of cocaine.

Herrera was arrested in Colombia on June 22, 2008 and extradited to the United States approximately one year later. On December 8, 2009, the defendant pled guilty before Your Honor to

Count Three of the Second Superseding Indictment, charging him with conspiring to import narcotics, in violation of Title 21, United States Code, Section 959. The defendant is presently incarcerated.

## II. The Defendant's Cooperation and the Resulting Prosecutions

### A. The Defendant's Cooperation and Substantial Assistance That Led Directly to Charges and Arrests

Herrera retained an attorney immediately upon his arrest in Colombia and, through the attorney, communicated that he was interested in cooperating.

He started formally meeting with the government shortly after his arrival in the United States and, from the beginning, truthfully admitted to his role in narcotics trafficking. He also detailed the roles of                             , Jorge de Jesus Velasquez, Ramon Antonio Duque Marin ("Duque"), Juan Guillermo Rivera Rivera ("Rivera"), and Juan Esteban Betancurt Herrera ("Betancur").

2

Velasquez and Duque were partners who invested in cocaine loads shipped by                 . Herrera
                   Herrera's information was used to obtain an indictment against them. They surrendered to U.S. authorities in 2010 and pled guilty to narcotics charges, stipulating that they should be held responsible for trafficking at least 40,000 kilograms of cocaine. Although they were arguably lower level traffickers than Herrera,                                , and thus face comparatively lower Guidelines ranges, they were still significant traffickers as indicated by their drug weight stipulations. Had Velasquez or Duque proceeded to trial, Herrera stood ready to testify against them. However, such testimony was not necessary as both pled guilty. See <u>United States v. Tello Candelo, et al.</u>, 10 CR 006 (RJD). Although Duque has not yet been sentenced, the government does not anticipate needing Herrera's testimony for a sentencing hearing given his stipulation.[2]

---

[2] Velasquez died in prison in July 2012.

3

Herrera's information was also used to obtain charges against Rivera and Betancur. Although, as workers for Herrera, Rivera and Betancur were lower level traffickers, Herrera should be given credit for inducing them to surrender to U.S. authorities. Through their surrender, the government also obtained narcotics ledgers that they kept for Herrera, which ledgers proved to be important evidence against the defendants described in the preceding paragraphs. Had Rivera or Betancur proceeded to trial, Herrera stood ready to testify against them. However, such testimony was not necessary. See United States v. Rivera, 10 CR 962 (RJD) and United States v. Betancur-Herrera, 10 CR 961 (RJD). Although Rivera and Betancur have not yet been sentenced, the government does not anticipate needing Herrera's testimony for a sentencing hearing.

B.  Assistance that Did Not Lead to Arrests or Charges But That Nonetheless Helped Prosecutions

4

C.   Other Cooperation and Assistance

Herrera convinced                              to meet with the government to provide information about other narcotics traffickers:

. These individuals were not charged with any crimes and their information did not lead to charges against other individuals. However, the information they provided, which included attempts to help the government locate fugitives, was helpful as background information for investigations.

6

Finally, it should be noted that Herrera provided information about a number of individuals who the government was not able to charge. Herrera also provided information about a number of narcotics trafficking-related assets and cash (totaling several million dollars) that were located in Venezuela and Spain and that the government attempted to seize; however, the government was not able to seize or obtain these assets despite Herrera's efforts and assistance.[5]

III. Conclusion and Request for Sealing

Accordingly, the government submits that the defendant has provided substantial assistance and moves, pursuant to Section 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(e), for the Court to downwardly depart from the applicable advisory Guidelines range and statutory mandatory minimum sentence when sentencing the defendant.

The public's qualified right to access court documents is outweighed here by the risk of danger to the defendant, see United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995), and the need to protect the integrity of an ongoing investigation (including searching for fugitives), see United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995). Further, unsealing this letter and revealing the defendant's cooperation may harm the ability of law enforcement to secure current and future cooperation from persons similarly situated to the defendant, a fact that also weighs against public disclosure. United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995). For these reasons, the government respectfully requests that this letter be filed under seal.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: ____/s/____
Walter M. Norkin
Assistant U.S. Attorney
(718) 254-6152

cc:
Joseph Rosenbaum, Esq. (Via email)
USPO Shayna Bryant (via email)

---

[5] The Colombian government did seize assets that were located in Colombia.